**FILED**

SEP - 6 2007

SEP 6 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CITY OF WAUKEGAN, ILLINOIS )<br><br>Plaintiff, )<br><br>v. )<br><br>NATIONAL GYPSUM COMPANY, )<br>BOMBARDIER MOTOR CORPORATION OF )<br>AMERICA, LAFARGE NORTH AMERICA, )<br>INC., LAFARGE BUILDING MATERIALS )<br>INC., f/k/a BLUE CIRCLE, INC., ST. MARY'S )<br>CEMENT, INC., LARSEN MARINE )<br>SERVICES, INC., ELGIN, JOLIET AND )<br>EASTERN RAILWAY COMPANY and )<br>WAUKEGAN PORT DISTRICT, )<br><br>Defendants. ) | **07CV5008**<br>**JUDGE  KENNELLY**<br>**MAG. JUDGE  VALDEZ** |

## COMPLAINT

Now comes Plaintiff, the City of Waukegan, Illinois, an Illinois Home Rule Municipality (the "City" or "Waukegan"), by its attorneys, and for its complaint against Defendants, National Gypsum Company ("Gypsum"), Bombardier Motor Corporation of America ("Bombardier"), Lafarge North America, Inc. ("Lafarge"), Lafarge Building Materials, Inc. ("LBM"), St. Mary's Cement, Inc. ("St. Mary's"), Larsen Marine Services, Inc. ("Larsen"), Elgin, Joliet and Eastern Railway Company ("EJ&E") and Waukegan Port District (the "Port District"), states:

### Nature of the Action

1.    This is a civil action brought pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §9607(a).  The City seeks to recover costs it has incurred in

1

connection with the Outboard Marine Corporation, Inc. ("OMC") Superfund Site (the "Site"), which is located in Waukegan, adjacent to and including Waukegan Harbor (the "Harbor"). The Site is depicted generally on the maps attached hereto as Group Exhibit A. In addition, the City seeks a declaratory judgment, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. §9613(g)(2), declaring that the Defendants are liable for any further response costs that the City may incur as a result of releases or threatened releases of hazardous substances at the Site.

## Jurisdiction and Venue

2.      This Court has jurisdiction over the parties to this action and the subject matter hereof pursuant to 42 U.S.C. §9613(b) and 28 U.S.C. §1331.

3.      Venue is proper in this district pursuant to 42 U.S.C. §9613(b) and 28 U.S.C. § 1391(b) and (c), because the claims arose, and the actual and threatened releases of hazardous substances occurred, in this District.

## Parties

4.      The City is a person who has incurred necessary costs of a response as defined in CERCLA Section 101(25), 42 U.S.C. §9601(25).

5.      Gypsum is a corporation organized and existing under the laws of the State of Delaware and doing business in Waukegan, Lake County, Illinois, and specifically in and around the Harbor.

6.      Bombardier is a corporation organized and existing under the laws of the State of Delaware and doing business in Waukegan, Lake County, Illinois, and specifically in and around the Harbor.

7.      Lafarge is a corporation organized and existing under the laws of the State of Maryland and doing business in Waukegan, Lake County, Illinois, and specifically in and around the Harbor.

8.      LBM is a corporation organized and existing under the laws of the State of Alabama and doing business in Waukegan, Lake County, Illinois, and specifically in and around the Harbor.

9.      St. Mary's is a corporation organized and existing under the laws of the State of Delaware and doing business in Waukegan, Lake County, Illinois, and specifically in and around the Harbor.

10.     Larsen is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Waukegan, Lake County, Illinois.

11.     EJ&E is a national railway company organized and existing under the laws of the State of Delaware and doing business in Waukegan, Lake County, Illinois.

12.     The Port District is a special purpose unit of government created pursuant to the Waukegan Port District Act, 70 ILCS 1865/3, and who's territory includes portions of the Harbor.


## The Facility

13.     The CERCLA facility ("Facility") includes the Site and all areas in which hazardous substances, and/or pollutants or contaminants, have come to be located.

14.     At all times material hereto, OMC was a marine products manufacturer. In the course of its operations, OMC used hydraulic fluid containing polychlorinated

biphenyls (PCBs) as a lubricant for its aluminum casting and machining operations. PCBs are a hazardous substance.

15.     During these operations, hydraulic fluid containing PCBs was discharged from the OMC facility to several areas at the Site. A map generally reflecting concentrations of PCBs that have come to be located in the Harbor is attached hereto as Exhibit B.

16.     Substantial quantities of PCBs were discharged from and to the Site and came to be located throughout the Facility.

17.     In 1981, the United States and Canadian governments identified the Harbor as one of 43 Areas of Concern ("AOC") or severely degraded geographic areas located within the Great Lakes Basin. The Site was subsequently added to the National Priorities List.

18.     In February 1992, OMC completed a sediment remediation project in the Harbor that entailed dredging, treating, and disposing of approximately one million pounds of PCB-contaminated sediments.

19.     In December 2000, OMC permanently closed its Waukegan lakefront manufacturing plants and filed for Bankruptcy protection under Chapter 11 of the Bankruptcy Code.

20.     The City took title to a portion of the Site known as the Waukegan Coke Plant property on June 26, 2002. Thereafter, on September 30 2005, the City took title to another portion of the Site known as the OMC North Plant.

4

21.    Despite the dredging remediation project performed by OMC, PCB contamination persists in Harbor sediments at levels above one part per million (the current regulatory limit).

22.    The City is informed and believes that, as part of Gypsum's normal business operations, large deep draft cargo vessels have caused prop wash which have routinely disturbed, suspended redistributed PCB-contaminated sediments throughout the Harbor. Such disturbances have mixed sediments into the water column, disrupted the benthic zone, and influenced Harbor water quality, thus exacerbating the PCB contamination in the Harbor.

23.    The City is informed and believes that, as part of Lafarge's normal business operations, large deep draft cargo vessels have caused prop wash which have routinely disturbed, suspended redistributed PCB-contaminated sediments throughout the Harbor. Such disturbances have mixed sediments into the water column, disrupted the benthic zone, and influenced Harbor water quality, thus exacerbating the PCB contamination in the Harbor.

24.    The City is informed and believes that, as part of LBM's normal business operations, large deep draft cargo vessels have caused prop wash which have routinely disturbed, suspended redistributed PCB-contaminated sediments throughout the Harbor. Such disturbances have mixed sediments into the water column, disrupted the benthic zone, and influenced Harbor water quality, thus exacerbating the PCB contamination in the Harbor.

25.    The City is informed and believes that, as part of St. Mary's' normal business operations, large deep draft cargo vessels have caused prop wash which have

routinely disturbed, suspended redistributed PCB-contaminated sediments throughout the Harbor. Such disturbances have mixed sediments into the water column, disrupted the benthic zone, and influenced Harbor water quality, thus exacerbating the PCB contamination in the Harbor.

26.    The City is informed and believes that, as part of Bombardier's normal business operations, it operates a submerged engine testing facility. The propellers in the testing facility have caused prop wash which have routinely disturbed, suspended redistributed PCB-contaminated sediments throughout the Harbor. Such disturbances have mixed sediments into the water column, disrupted the benthic zone, and influenced Harbor water quality, thus exacerbating the PCB contamination in the Harbor.

27.    All of the Defendants owned and/or operated land within the Facility at the time of disposal or where contaminants have come to be located. To date, none of the Defendants has reimbursed the City for any of the aforementioned costs.

## CLAIM FOR COST RECOVERY UNDER CERCLA

28.    CERCLA Section 107(a), 42 U.S.C. 9607(a), provides, in pertinent part, that the following persons are liable for response costs which are consistent with the National Contingency Plan, 40 C.F.R. Part 300, and which have been incurred by the City as result of a release or threatened release of hazardous substances from a facility:

   a. the [current] owner or operator of . . . [the] facility,

   b. any person who at the time of disposal of any hazardous substance owned or operated [the] facility . . .,

6

     c.  any person who . . . arranged for disposal or treatment [at the facility], or arranged with a transporter for transport for disposal or treatment [at the facility], or hazardous substances owned or possessed by such person . . . ., and

     d.  any person who . . . . accepted any hazardous substances for transport to [the facility] . . . .

42 U.S.C. § 9607(a).

29.    Each of the Defendants falls within the class of persons described in §§107(a)(1) and/or 107(a)(2) of CERCLA,  42 U.S.C. §§9607(a)(1) and (a)(2).

30.    The Site, and all locations where PCBs have come to be located, are collectively a "facility' within the meaning and scope of CERCLA Sections 109(9) and 107(a).  42 U.S.C. §§9601(9) and 9607(a).

31.    The City is informed and believes that the sediments in the Harbor at the Facility contain PCBs, a hazardous substance, within the meaning and scope of CERCLA Sections 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a).

32.    Disposal of PCBs, a hazardous substance, occurred at the Facility during the times in which Defendants owned and/or operated the Facility, within the meaning and scope of CERCLA Sections 101(29) and 107(a), 42 U.S.C. §§9601(29) and 9607(a).

33.    There have been releases or the threat of releases of hazardous substances into the environment at or from the Facility, within the meaning and scope of CERCLA Section §101(22), 42 U.S.C. 9601(22).

34.    The actual and threatened "releases" of hazardous substances from the Facility have caused the City to incur "response costs" within the meaning and scope of CERCLA Sections 101(25) and 9607(a), 42 U.S.C. §§9601(25) and 9607(a).

35.    The City has incurred, and will continue to incur, response costs in connection with the investigation of the PCBs at the Facility and potential remedial actions, including, but not limited to, costs for design of a dredging project aimed at the removal of PCBs in the Harbor. The costs incurred by the City are consistent with the National Contingency Plan, 40 C.F.R. Part 300.

36.    Each of the Defendants is a current owner and/or operator of the Facility, and at the time of disposal was an owner and/or operator of the Facility, within the meaning and scope of CERCLA Sections 107(a)(1) and (a)(2), 42 U.S.C. §§9607(a)(1) and (a)(2).

37.    Each of the Defendants is jointly and severally liable to the City, pursuant to CERCLA Section 107(a), 42 U.S.C. 9607(a), for all response costs incurred by the City in connection with the Facility, including (without limitation) pre-judgment interest.

38.    Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. §9613(g)(2), the City is also entitled to a declaratory judgment, binding on any subsequent action to recover further response costs relating to the Facility, that the Defendants are jointly and severally liable for such costs.

WHEREFORE, the City prays for judgment against Defendants as follows:

A.    For judgment against Defendants, jointly and severally, for all response costs incurred by the City in connection with the Facility, including pre-judgment interest;

B.    For a declaratory judgment, binding on all subsequent actions to recover further response costs relating to the Facility, that each of the Defendants is jointly and severally liable for such costs;

8

C.    For such other relief as the Court deems appropriate.


The City of Waukegan

By: _____

Michael S. Blazer
One of its attorneys

Michael S. Blazer (ARDC No. 6183002)
Lance E. Franke (ARDC No. 6286183)
Derek B. Rieman (ARDC No. 6283836)
Jeep & Blazer, LLC
24 N. Hillside Avenue, Suite A
Hillside, Illinois 60162
(708) 236-0830 (Office)
(707) 236-0828 (Fax)
mblazer@enviroatty.com
lefranke@enviroatty.com
dbrieman@enviroatty.com

# GROUP EXHIBIT A







SLIP 1

MARINA

INNER HARBOR
EXTENSION

INNER HARBOR

NORTH HARBOR

SLIP 4

ENTRANCE CHANNEL

OUTER HARBOR

**Legend**

**2003 Maximum PCP Concentrations (ppm)**
- 0.184 - 1
- 1.001 - 5
- 5.001 - 10
- 10.001 - 16
- 16.001 - 33.298

**2005 Maximum PCB Concentration (ppm)**
- 0.112 - 1
- 1.001 - 5
- 5.001 - 10
- 10.001 - 16
- 16.001 - 36.64

**2007 Maximum PCB Concentration (ppm)**
- 0.159 - 1
- 1.001 - 5
- 5.001 - 10
- 10.001 - 16
- 16.001 - 17.748

Figure 1
Maximum PCB Concentrations
Waukegan Harbor Area of Concern
Waukegan, Illinois

CH2MHILL