**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CITY OF WAUKEGAN, ILLINOIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 C 5008** |
| | ) | |
| **NATIONAL GYPSUM CO., BOMBARDIER MOTOR CORP. OF AMERICA, LAFARGE NORTH AMERICA, INC., LAFARGE BUILDING MATERIALS, INC., and ST. MARY'S CEMENT, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Waukegan Harbor has long been contaminated with polychlorinated biphenyls (PCBs) that were discharged by the now-defunct Outboard Marine Corp. (OMC), a marine products manufacturer. In the 1980's, the United States Environmental Protection Agency (EPA) put the harbor and some of the surrounding land on the National Priorities List, which guides the agency in determining which sites warrant further investigation. In 1992, OMC completed a remediation project that involved dredging, treating, and disposing of around a million pounds of PCB-contaminated sediments. OMC closed its plants in the area of the harbor in 2000 and filed for bankruptcy.

The City of Waukegan, which later acquired title to land adjoining the harbor, alleges that despite the remediation, the harbor remains contaminated with PCBs at

levels in excess of current regulatory limits. It also alleges that deep-draft vessels entering the harbor have stirred up and redistributed PCBs located on or near the bed of harbor, causing "releases" within the meaning of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Waukegan alleges that this has caused it to incur "response costs" within the meaning of CERCLA, including costs for design of a dredging project aimed at removal of PCBs from the harbor.

In this suit, Waukegan has sued several entities that own land adjoining the harbor and/or that have caused deep-draft vessels to traverse the harbor. Waukegan's suit is brought under CERCLA and a similar Illinois statute. Waukegan alleges that each of the defendants is jointly and several liable for response costs Waukegan has incurred to date and should be declared liable for future response costs.

All of the defendants (including then-defendant Waukegan Port District) moved to dismiss Waukegan's complaint under Federal Rule of Civil Procedure 12(b)(6). The Court denied defendant Bombardier Motor Corp. of America's motion on the ground that Waukegan had sufficiently alleged that Bombardier was an "operator" of the site, one of the bases upon which liability for response costs may be imposed under CERCLA. The Court granted the motions to dismiss filed by all of the other defendants, holding that Waukegan had not alleged sufficiently that any of them was either an "owner" or an "operator" of the site. *See City of Waukegan v. Nat'l Gypsum Co.*, 560 F. Supp. 2d 636 (N.D. Ill. 2008).

After the ruling, Waukegan filed a second amended complaint seeking to overcome the defects in the complaint the Court had noted in its ruling. Since then, Bombardier has answered Waukegan's claims, and Waukegan has voluntarily

dismissed its claims against the Waukegan Port District. The remaining defendants have moved to dismiss the second amended complaint for failure to state a claim.

The defendants assert numerous arguments in support of dismissal, but the Court need address only one of them: the argument that Waukegan's claims are barred by the applicable statute of limitations. Because the statute of limitations is an affirmative defense, an argument that a complaint is time-barred typically cannot be decided on a motion to dismiss for failure to state a claim, because a plaintiff is not required to anticipate potential affirmative defenses in its complaint. *See, e.g., U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). In some cases, however, the complaint's allegations establish that the plaintiff's claims are time-barred and that there is no way around the time-bar (such as disputes about when the plaintiff's claims accrued or the applicability of limitations-extending doctrines like equitable tolling or estoppel). In those situations, a Rule 12(b)(6) motion is an appropriate vehicle for addressing the limitations issue. *See, e.g.,Small v. Chao,* 398 F.3d 894, 898 (7th Cir. 2005); *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 n.14 (7th Cir. 1998).

This case, the Court concludes, gives rise to one of these relatively unusual situations. For the reasons stated below, the Court determines that Waukegan's CERCLA claims against all the remaining defendants are time-barred. In this regard, the Court considers not just the allegations in the second amended complaint itself, but also the documents referenced in it, which include a consent decree entered in earlier litigation involving OMC. Both sides agree that a court may appropriately consider, on a Rule 12(b)(6) motion, documents that the plaintiff has referenced chosen to attach to its

complaint. *See, e.g., EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).

CERCLA contains the following limitations provision:

> **Actions for recovery of costs**
>
> An initial action for recovery of the costs referred to in section 9607 of this title must be commenced –
>
> > (A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
> >
> > (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.
>
> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

42 U.S.C. § 9613(g)(2).

Because Waukegan's suit is indisputably an action to recover costs under 42 U.S.C. § 9607, section 9613(g)(2) supplies the relevant statute of limitations. The question is which part of section 9613(g)(2) applies. Defendants argue that costs Waukegan seeks to recover in the present case are those related to what defendants characterize as a remedial action within the meaning of section 9613(g)(2)(B).

Remedial action, defendants argue, was instituted via a 1988 consent decree between the federal government and OMC that resolved a suit concerning discharges of PCBs into the harbor. It is undisputed that the cleanup activity under that consent decree began no later than 1992. In 2002, Waukegan entered into an agreement with OMC's bankruptcy trustee to acquire the company's property adjacent to the harbor. In 2005, Waukegan entered into a supplemental consent decree with the government in the *US v. OMC* case in which (it appears) Waukegan agreed to take over some of OMC's obligations under the 1988 consent decree. Because it is undisputed that more than six years elapsed between the beginning of the work under the consent decree and the filing of the present suit, defendants contend that Waukegan's claims are time-barred.

Waukegan does not contend that case involves a "subsequent action . . . for further response costs" of the type that may be maintained at any time during a response action but no later than three years after all response action is completed. Nor does Waukegan suggest any basis for extending or tolling the limitations period under section 9613(g)(2). Rather, Waukegan makes a single argument in opposition to defendants' limitations argument: it contends that its suit seeks recovery of costs not for a remedial action, but for a removal action that is not yet complete. Thus, Waukegan argues, the statute of limitations for suits to recover costs relating to remedial actions does not apply, and the three-year statute governing cost recovery suits relating to removal actions has not yet begun.

Resolution of the limitations issue thus hinges on whether Waukegan is seeking to recover costs relating to a "removal action" or to a "remedial action." The Court concludes that the *US v. OMC* consent decree, which as noted earlier is referenced in

Waukegan's second amended complaint, demonstrates that this case involves the latter.

Under CERCLA, the term "remedial action" means

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

42 U.S.C. § 9601(24). The term "removal" means

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster

Relief and Emergency Assistance Act.

*Id.* § 9601(23).

As is apparent from comparison of these definitions, there is a great deal of overlap between what a "removal action" may involve and what a "remedial action" may involve. Among other things, the final clause of the definition of "remedial action" makes clear that remediation can involve removal of hazardous substances. One distinction, upon which Waukegan relies in the present case, is found in the initial words of the definition of remedial action: it involves actions "consistent with permanent remedy." Waukegan argues, in essence, that the consent decree did not get the job done, and that this (among other things) indicates the work under the decree involved removal, not remedial action. Permanency, however, does not necessarily involve returning the site to its pre-contaminated state; other provisions of CERCLA make it clear that a remedial action can involve hazardous substances remaining at the site. *See id.* § 9621(c) (ongoing review required if remedial action if remedial action "that results in any hazardous substances, pollutants, or contaminants remaining at the site").

In the Court's view, the terms of the *US v. OMC* consent decree make it clear that it involved a remedial action intended to constitute permanent (though imperfect) remediation of the Waukegan Harbor site. The decree contains numerous terms making it clear that the cleanup activity it contemplated is a remedial action within the meaning of CERCLA. Among others, these include the following. First, the decree recites that its terms will be made available to the public pursuant to CERCLA section 117, a public meeting will be held, and the decree shall constitute "the final Remedial

Action Plan." Def. Reply, Ex. A at 4. Section 117's requirements, in turn, apply to "remedial action." *See* 42 U.S.C. § 9617(a) & (b). Second, the decree provides for periodic review by the EPA to assure that human health and the environment "are being protected by the remedial action being implemented." Def. Reply, Ex. A at 32 ¶ VI. CERCLA requires this whenever (as in the case of Waukegan Harbor) the government "selects *a remedial action* that results in any hazardous substance, pollutants, or contaminants remaining at the site . . . ." 42 U.S.C. § 9621(c) (emphasis added). Third, the decree contains a provision ensuring compliance with CERCLA's "degree of cleanup" requirements that apply to "[r]emedial actions." *Compare* Def. Reply, Ex. A at 5, 6 *with* 42 U.S.C. § 9621(d)(1) & (2)(A)(II).

In sum, the terms of the *US v. OMC* consent decree make it clear that the cleanup done at the site was and is a "remedial action," not a "removal action" – even though the work involved removal of hazardous substances. As a result, the applicable limitations period is supplied by section 9613(g)(2)(B), not section 9613(g)(2)(A). Because Waukegan did not commence this action within six years after initiation of on-site construction of the remedial action, its CERCLA claims are time-barred.

Though Bombardier has answered the second amended complaint and has not moved to dismiss, it has asserted a limitations defense in its answer. *See* Bombardier Answer at 36. Because there is no basis to believe that the arguments relating to the application of the statute of limitations to Waukegan's claims against Bombardier differ from those relating to its claims against the other defendants, the Court, on its own motion, grants judgment on the pleadings in Bombardier's favor with regard to

Waukegan's CERCLA claim. In addition, because no CERCLA claim remains against Bombardier, Bombardier's counterclaim, which arises under CERCLA, is moot.

This leaves only Waukegan's state law claim against the defendants. Defendants do not suggest that this claim is time-barred. Because the Court has jurisdiction over the state law claim only by virtue of supplemental jurisdiction, *see* 2d Am. Compl. ¶ 4, and because this case remains at a procedurally early stage, the Court dismisses Waukegan's state law claim for lack of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

**Conclusion**

For the reasons stated above, the Court grants defendants' motions to dismiss as to Waukegan's CERCLA claim [docket nos. 117, 119, 121, 123 & 125]; grants judgment on the pleadings in favor of Bombardier on the CERCLA claim; dismisses as moot Bombardier's counterclaim and thus terminates Waukegan's motion to dismiss the counterclaim [docket no. 100]; and dismisses Waukegan's state law claim as to all the defendants for lack of supplemental jurisdiction.

The Clerk is directed to enter judgment reading as follows: Judgment is entered in favor of defendants and against the plaintiff on Count 1 of plaintiff's second amended complaint; Count 2 of plaintiff's second amended complaint is dismissed for lack of supplemental jurisdiction; and defendant Bombardier Motor Corp.'s counterclaim is dismissed as moot. The status hearing date of September 11, 2008 is vacated.

MATTHEW F. KENNELLY
United States District Judge

Date: September 8, 2008